[No. 42988-8-II.   Division Two.   December 30, 2014.]

THE CITY OF BONNEY LAKE, *Respondent*, v. ROBERT KANANY, *Appellant*.

*Rhys A. Sterling*, for appellant.

*Amy Jo Pearsall, City Attorney*, and *Mark D. Orthmann, Assistant*, for respondent.

¶1  BJORGEN, J. — Robert Kanany appeals the trial court's denial of his summary judgment motion and its grant of summary judgment to the city of Bonney Lake (City), upholding civil penalties assessed by the City for various code violations at Kanany's properties. The published portion of this opinion addresses Kanany's argument that portions of Title 14 of the Bonney Lake Municipal Code (BLMC) deprived him of procedural due process because they did not provide an appeal process for all violations claimed and penalties assessed. On this issue, we hold that the relevant portions of Title 14 BLMC provided Kanany with a full opportunity to appeal the notices of violation and penalties at issue and therefore did not deprive him of due process. In the unpublished portion of the opinion, we reject Kanany's remaining arguments. Accordingly, we affirm the decision of the trial court.

## FACTS

¶2  Kanany and Navid Kanani[1] are co-owners of property in the city. In 2004, Kanany applied for a residential accessory building permit from the City, indicating his intent to

---

[1] Because the last names Kanany and Kanani are similar, we refer to Navid Kanani by his first name to avoid confusion, intending no disrespect.

build a duplex and a garage with a heated upstairs unit on the property. The City approved his permit and noted that "per code detached garage may not be converted to living space." Clerk's Papers (CP) at 212. After the duplex and garage were built, Kanany used the duplex as a rental property.

¶3 Between 2007 and 2009, responding to complaints about Kanany's property, the City investigated the space above Kanany's garage to determine whether he was in compliance with the BLMC. In February 2007, the City sent Kanany a notice of civil violation, indicating that his property was in violation of BLMC 18.22.090 because he utilized or converted a portion of the garage into an "Accessory Dwelling Unit" (ADU). ADUs are prohibited in conjunction with a duplex. BLMC 18.22.090(C)(1). The City imposed a $1,000-a-day fine until Kanany became compliant. The notice stated that Kanany had 15 days to appeal the notice.

¶4 In March 2007, Kanany sent Denney Bryan of the City a letter stating that his attorney had been told by the City that Kanany would not be in violation of the BLMC as long as the space above the garage did not contain a kitchen stove and washer/dryer and that Bryan had told him that the washer/dryer "is not an issue." CP at 216. Kanany stated that his tenants were using the space above the garage as a bedroom and recreational room and that "neither appliances" were in that space. CP at 216. This apparently satisfied the City for 2007. In 2008, responding to a complaint from a neighbor, the City again investigated and concluded that Kanany's property and the space above the garage still complied with the BLMC.

¶5 On August 5, 2009, after another complaint, the City issued a letter to Kanany stating that the space above the garage violated BLMC 18.22.090(C)(1). The City asked Kanany to voluntarily comply with its requests to vacate tenants from the space and arrange an inspection of the property to verify the vacancy. The City gave Kanany 45 days to comply.

¶6 On November 18, 2009, the City sent Kanany a notice of civil violation indicating that he had failed to respond to its letter within 45 days. The notice stated that under BLMC 14.130.070, it was imposing a $1,000-a-day fine until Kanany complied, and that under BLMC 14.130.080 and BLMC 14.120.020, the City's violation determination and subsequent fine were final unless Kanany appealed within 15 days. Kanany did not appeal.

¶7 On January 8, 2010, the City filed a complaint against Kanany in superior court, asserting that he maintained an impermissible ADU in violation of BLMC 18.22-.090(C)(1). Alleging Kanany's failure to respond to the November 2009 notice of civil violation, the City stated that its code violation determination and fines were final and collectible under BLMC 14.130.070.

¶8 In the complaint, the City misidentified the property's address, and in June 2010, it moved under CR 15(a) for leave to file an amended complaint with the property's correct address.[2] Kanany objected to the City's motion because the City had not joined Navid as a necessary party in the lawsuit under CR 19(a).

¶9 In August, the trial court determined that (1) chapter 14.130 BLMC was constitutional on its face and as applied to Kanany, (2) Navid was not a necessary party to the action under the BLMC or CR 19(a), and (3) the City's motion to amend was proper under CR 15(a). The trial court granted the City's motion to amend.

¶10 In November 2011, Kanany and the City filed cross motions for summary judgment. Kanany's motion asked the court to dismiss the city's complaint with prejudice. Kanany contended that beginning in 2004, he communicated with city officials several times about the space above his detached garage and they always told him that he was in compliance with the BLMC until the November 2009 notice

---

[2] The City identified Kanany's city mailing address as the address in violation instead of the proper address of the property containing the duplex and garage.

of civil violation. Kanany asserted that he was not in violation of the BLMC because his tenants' use of the space above the garage had not changed between 2004 and 2009. Kanany also asserted that equitable estoppel prevented the City from assessing fines against him because it had previously agreed that Kanany was not in violation. Finally, Kanany argued that BLMC 18.22.090(C)(1) was invalid and unenforceable because it directly conflicted with an overriding BLMC provision and was fatally inconsistent with the City's comprehensive plan.

¶11 To support his motion, Kanany filed a declaration attaching copies of several documents, including his 2007 and 2008 communication with the City, a June 2008 letter from the City to the complaining neighbor, the August 2009 letter and Kanany's letter in response, and the November 2009 notice of violation from the City. Kanany also supported his motion with a declaration from his attorney and attached copies of several city ordinances and the City's comprehensive plan.

¶12 The City's cross motion for summary judgment asked the court to find that Kanany violated the BLMC and owed $48,000 in fines. The City argued that it gave Kanany proper notification of the violation and the consequences for failing to voluntarily correct the violation. The City stated that because Kanany failed to contact the City within 45 days of receiving the notice letter, it issued a notice of civil violation and imposed a $1,000-a-day penalty while the violation continued. In addition to the 45 days given to respond to the City's August 2009 letter, the City gave Kanany 15 days to appeal the November 2009 violation notice and penalty; however, Kanany still failed to respond. The City argued that there was no genuine issue of fact that Kanany failed to appeal the notice and fines and, absent any appeal, the City's notice of civil violation is final and the associated fines are collectible.

¶13 In December 2011, the trial court granted the City's motion for summary judgment and denied Kanany's motion

for summary judgment. The court entered judgment "against [Kanany] on behalf of the City for $48,000, the total amount of fines owed in connection to the Notice of Civil Violation as of the filing of the original complaint in this matter." CP at 350. Kanany appeals.

ANALYSIS

¶14 Kanany argues that under *Post v. City of Tacoma*, 167 Wn.2d 300, 217 P.3d 1179 (2009), BLMC 14.120.020, 14.130.070, and 14.130.080 are unconstitutional because they allow a single notice of violation to impose subsequent daily penalties without any opportunity to appeal them. The City argues that the BLMC is unlike the Tacoma city ordinances at issue in *Post* because the BLMC provided express procedures for Kanany to raise any argument against the violation determination but Kanany declined to take advantage of any of the procedures. Kanany also raises a number of challenges discussed in the unpublished portion of this opinion. We affirm all the challenged rulings of the trial court.

I. STANDARD OF REVIEW

¶15 Summary judgment is appropriate where the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review questions of law de novo. *Berger v. Sonneland*, 144 Wn.2d 91, 103, 26 P.3d 257 (2001). When reviewing a grant of summary judgment, we consider solely the issues and evidence called to the trial court's attention on a motion for summary judgment. RAP 9.12.

II. PROCEDURAL DUE PROCESS

¶16 Title 14 BLMC provides the City's enforcement authority for development code violations. BLMC 14.130.010.

Each day in violation constitutes a separate offense. BLMC 14.130.020(C). BLMC 14.130.030(A) provides that any development code violation shall be a misdemeanor and a civil violation, the penalty being $1,000 for each day in violation. If the City determines that a person is violating the development code, it attempts to secure voluntary correction of the problem by explaining the violation and requesting correction before issuing a notice of civil violation. BLMC 14.130.060.

¶17 A notice of civil violation represents a determination that a violation of the development code has been committed. BLMC 14.130.070(A). A property owner may file a written appeal of the notice to the hearing examiner within 15 days of its issuance. BLMC 14.120.020(A); BLMC 14.130.080. At the hearing before the hearing examiner, the property owner and the city Planning and Community Development Department director may participate and call witnesses. BLMC 14.130.080. The hearing examiner is required to prepare findings as to whether a preponderance of evidence shows that the violation occurred and that the required corrective action is reasonable. BLMC 14.130.080. The hearing examiner's decision may be appealed to superior court. BLMC 14.120.020(G).

■■ ¶18 Our state and federal case law holds that the fundamental requirement of procedural due process "is the opportunity to be heard at a meaningful time and in a meaningful manner." *Post*, 167 Wn.2d at 313 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). To determine whether existing procedures are adequate to protect the interest at stake, a court must consider the following three factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Post*, 167 Wn.2d at 313 (quoting *Mathews*, 424 U.S. at 335); *see also Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 78, 838 P.2d 111 (1992) (adopting and applying the *Mathews* test).

¶19 The analysis in *Post* illustrates the application of the *Mathews* test in a setting similar, but not identical, to that presented here. In *Post*, the city of Tacoma found many of Post's properties to be in violation of various city standards. *Post*, 167 Wn.2d at 303. Tacoma sent notices of violation for each property, "notifying Post that the properties were either substandard or derelict." *Post*, 167 Wn.2d at 305. These notices "described the violations and advised Post how to seek administrative review of the violation notice." *Post*, 167 Wn.2d at 305. For most of his properties, Post responded to the notices by agreeing to repair schedules. *Post*, 167 Wn.2d at 305. However, he did not respond to at least two of the violation notices. *Post*, 167 Wn.2d at 306.

¶20 "Post failed to comply with the agreed repair schedules for 17 properties." *Post*, 167 Wn.2d at 306. In response, Tacoma began issuing civil penalties in the amount of $125 per property pursuant to Tacoma Municipal Code 2.01.060(D)(4)(b) and (E)(3)(b). *Post*, 167 Wn.2d at 306. As a result, Tacoma imposed hundreds of thousands of dollars in civil penalties. *Post*, 167 Wn.2d at 303, 307. Post attempted to appeal many of the fines, but in most cases Tacoma denied a hearing, taking the position that the appeals were untimely because its municipal code required an appeal within 30 days of the first notice of violation. *Post*, 167 Wn.2d at 306. Post sued, "seeking to bar Tacoma from enforcing its building code against him on numerous grounds," including the claim that his rights to due process were violated. *Post*, 167 Wn.2d at 303-04.

¶21 On appeal, the Supreme Court ultimately held that the civil infraction ordinance at issue offended procedural due process under *Mathews*, 424 U.S. at 333, because it "purport[ed] to authorize the unlimited and unreviewable issuance and enforcement of subsequent civil infractions

and penalties without any system of procedural safeguards." *Post*, 167 Wn.2d at 315. In its *Mathews* analysis, the court in *Post* relied heavily on the risk of the erroneous deprivation of property rights due to the absence of any procedural safeguards after issuance of the first mandatory fine, including subsequent discretionary fines. *Post*, 167 Wn.2d at 313-15. Because those were separate decisions involving changed facts and risk of error, *Post* held that due process required new appeal opportunities. 167 Wn.2d at 314-15.

¶22 The mechanics of Tacoma's flawed system, though, were different in critical respects from that of the City of Bonney Lake. If, after issuance of a notice of violation, the violation was not corrected, the Tacoma ordinance provided for four successive mandatory fines. *Post*, 167 Wn.2d at 304-05. If the violation remained after the four fines, Tacoma had the discretion either to assess or not to assess fines for each day until the violation was remedied. *Post*, 167 Wn.2d at 305. The owner had the right to seek administrative review only after the initial notice of violation and after the first mandatory fine. *Post*, 167 Wn.2d at 305. The owner had no right to an administrative appeal of any of the wholly discretionary fines Tacoma might impose after the mandatory penalties. *Post*, 167 Wn.2d at 305.

¶23 Here, in blunt contrast, there was nothing discretionary about the daily fines at issue. They were automatic, and Kanany had the full opportunity to appeal the continuing fines for his specific violation. The November 18 notice of civil violation characterized itself as continuing in nature and specifically described the nature of the violation, the code section violated, and the nature of the action required for its remedy. The notice imposed a daily fine[3] until compliance was achieved and specifically stated that the violation was ongoing. The notice then expressly advised Kanany that he could appeal under BLMC 14.130.080

---

[3] No issue is raised whether the total amount of the fines assessed is excessive as a remedial measure.

and BLMC 14.120.020 by filing an appeal in writing with the Bonney Lake Planning and Community Development Department within 15 days of his receipt of the notice. BLMC 14.120.020 and BLMC 14.130.080 each specifically allow appeals of notices of civil violations.

¶24 Thus, the right to appeal that notice under BLMC 14.120.020 and BLMC 14.130.080 afforded the full opportunity to challenge both the determination that the violation was occurring and the imposition of specific daily fines until that violation was remedied. This appeal opportunity provided Kanany the vehicle to challenge the ongoing daily fines, whether accruing before or after the end of the 15-day appeal period.

¶25 In sum, Kanany was given the full opportunity to appeal all aspects of the notice of civil violation, including the ongoing daily fine. That opportunity to appeal the entire assessment of fines was the step that was absent in *Post*. The absence of that opportunity, the absence of that safeguard against erroneous deprivation of property, was the flaw that led the court in *Post* to find a due process violation under *Mathews*. Here, that safeguard is fully present.

¶26 Returning to the test in *Mathews*, applied by our court in *Post*, 167 Wn.2d at 313, the private interest here is the same as that at stake in *Post*, that of avoiding the "assessment of erroneous or excessive monetary penalties." *Post*, 167 Wn.2d at 313. The government interest is also the same as that in *Post*, "protecting public safety, protecting property values, and preventing declining neighborhoods." *Post*, 167 Wn.2d at 314. The critical weight in the *Mathews* test in the present appeal is the second element, the risk of an erroneous deprivation of the private interest. As noted, *Post* relied on the absence of any procedural safeguards when Tacoma decided whether to issue its discretionary fines. *Post*, 167 Wn.2d at 314-15. As also noted, Kanany had the opportunity to appeal his ongoing fines in full. Requiring multiple opportunities to appeal the same fines for the

same violation, which accrue after the appeal period, does little, if anything, to further guard against erroneous deprivation of the private interest at stake. Rather, its principal effect is to burden the municipality with superfluous and costly administrative processes, which directly erode the governmental interest protected by the third element in the *Mathews* test. Such redundancies in procedure are not among the majestic requirements of due process. Under both *Mathews* and *Post*, the City here did not deprive Kanany of procedural due process.[4]

¶27 Our decision of this appeal, of course, is confined to those issues properly raised by it. Kanany's due process challenge is to the ongoing fines imposed by the notice of civil violation. He does not argue that he has attempted to remedy any lack of compliance or that the City has erred in deeming any such attempt to be inadequate. Thus, his due process challenge fails because he was given the opportunity to appeal his continuing daily fines for the violation found in the notice, as described above. On the other hand, if Kanany were challenging the City's decision on the adequacy of corrective measures he took, due process may well require the City to afford an administrative appeal of that decision and the continuation of the remedial fines.[5] *See Post*, 167 Wn.2d at 315. Kanany, however, is not raising

---

[4] Alternatively, Kanany argues that the BLMC is also unconstitutional in that it does not provide a complete system for enforcing civil infractions. The system is incomplete, Kanany argues, because the hearing examiner is not authorized to decide constitutional or equitable matters. The City responds that the BLMC comports with chapter 7.80 RCW and is constitutional because constitutional and equitable arguments can still be raised through appeals in the state court system as provided in BLMC 14.120.020(G). Kanany's argument rests on *Post*. The citations he gives from *Post*, however, come from the Supreme Court's discussion of whether the Land Use Petition Act, chapter 36.70C RCW, barred Post from challenging Tacoma's imposition of penalties. *Post*, 167 Wn.2d at 308-12. Because neither party in this case raises a land use challenge, this portion of *Post* cannot be read for the remarkable proposition that hearing examiner systems throughout the state are unconstitutional because examiners are not authorized to decide equitable or constitutional questions. The BLMC is not unconstitutional for this reason.

[5] The City stated at oral argument that its municipal code would afford Kanany an opportunity to appeal in such a situation. Wash. Court of Appeals oral

such a challenge, in either an as applied or a facial sense. The trial court was correct in ruling that the City's actions before us did not deprive Kanany of procedural due process.

¶28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J., and PENOYAR, J. PRO TEM., concur.

Reconsideration denied March 12, 2015.

Review denied at 183 Wn.2d 1020 (2015).

---

argument, *City of Bonney Lake v. Kanany*, No. 42988-8-II (Sept. 13, 2013), at 15 min., 6 sec. (on file with the court).